[No. 37749. En Banc. July 21, 1966.]

KENNETH C. LOFFLER, *Respondent*, v. BEN OTTMAR *et al.*, *Appellants.**

*Smith, Smith & Smith*, by *Del Cary Smith, Jr.*, for appellants.

*James P. Connelly* and *Cashatt, Williams, Connelly & Rekofke*, for respondent.

*Reported in 417 P.2d 344.

HALE, J.—The tragic ending to a pleasant excursion, when a parked car slipped its brakes and carried a young college student to his death, brings up the question of host-guest relationships. Ben and Evelyn Ruth Ottmar let their son Allen take a car, a 1961 Pontiac Tempest with stick shift and rear-end transmission, to Eastern Washington State College at Cheney, where he and his high school friend, Jim Loffler, were to room together. On Tuesday evening, September 25, 1962, during orientation week before start of regularly scheduled classes, Allen, Jim and two other freshmen, Stanley Bischoff and James Knapp, with no particular plans in mind for the evening, drove in Allen Ottmar's car from Cheney to Spokane.

The four boys visited a young acquaintance at his Spokane apartment where they each had a glass of beer. They then left the apartment to buy some more, but consumed very little of it on their return. The beer had no bearing on the tragedy that followed and comes into the case merely to supply some evidence of and to characterize the social relationship among the boys at the time. Shortly after buying the beer, the four boys again left their friend's apartment and, while driving east on Third Avenue, with young Ottmar at the wheel, all agreed to go out to Lincoln Park for a view of the city at night. They had no particular purpose or mission in mind other than to stop at the park, but did intend to return to Cheney together later that same evening in the Ottmar car.

It was about 10 p.m. when Allen Ottmar steered the car on up and into Lincoln Park, and stopped it in a parking area situated at the edge of a steep cliff overlooking Spokane. From a point about 20 feet inland, the parking area sloped gradually downward toward the cliff's edge.

Allen parked the car facing the cliff, turned off the ignition and headlights, and, believing that he had both securely set the emergency brake and put the car in gear, got out of the car on the driver's side. The other three boys stepped from the car too, James Loffler alighting from the right side, and they sauntered toward the cliff with the intention of urinating while there. After the car had been stopped

and the boys had left it for a period of time varying in estimate from a few seconds to a couple of minutes, it started to roll toward the cliff. One of the boys shouted a warning as they stepped away from each side of it, but the warning came too late to save their friend for the car plunged over the cliff carrying James Loffler with it. He died of the injuries from his fall at the age of 19.

James Loffler's father brought this action for wrongful death against the driver and his parents. From a judgment for plaintiff entered on a $12,991 verdict, defendants appeal. The parties agree that the boys were the guest passengers of Allen Ottmar and that a host-guest relationship existed between Allen Ottmar and James Loffler during the time the boys were in the automobile. They agree, too, that there was sufficient evidence of ordinary negligence on the driver's part in not properly setting the brakes or putting the car in gear to submit to the jury, but that such negligence did not amount to gross negligence under RCW 46.08.080, the host-guest statute.

The case presents but one question requiring discussion. Appellants contend that the host-guest relationship, existing when the car pulled into the parking area, persisted up to the moment of impact. Because the negligence was committed in operating the car, the host-guest statute applies, say appellants, making the driver liable only for gross negligence even though the driver and guest passengers were outside the car at the time of impact. Respondent, taking an opposite view, urges that the host-guest relationship ended when the parties stepped away from the automobile and that this left the driver liable for ordinary, as distinguished from gross, negligence.

Ruling that the relationship had ended before impact, the court instructed the jury that by statute no person in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine and effectively setting the brake when the vehicle is standing on a perceptible grade, and that violation of the statute constituted negligence, which, if the proximate cause of the death, warranted a verdict for plaintiffs.

As we have noted, the parties agreed that plaintiff submitted sufficient evidence of negligence to support a jury's finding thereof, but that such negligence would not amount to gross negligence under RCW 46.08.080, reading:

No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication, and unless the proof of the cause of action is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser.

Defendants cite *Owens v. Young,* 59 Wn.2d 30, 365 P.2d 774 (1961), which held that a temporary interruption in the journey—even with the passenger outside the car at the moment of impact—did not terminate the pre-existing host-guest relationship during the short interval. There, however, defendant driver was in physical control of and in actual operation of the vehicle, backing it on the highway toward plaintiff who was at the time walking toward the moving vehicle to enter it. The operative distinctions between that case and this one will be noted in the statement therein that "When they were nearly opposite the rear end of the vehicle and *were preparing* to cross the highway to it, they noticed an oncoming automobile," and also that the parties in *Owens* had not contemplated a halt in the transportation.

Thus, the driver in *Owens* was in actual, physical control of a slowly backing vehicle while, at the moment of impact, his passengers were in process of preparing to re-enter it following an unanticipated interruption in the journey. The driver, we think, was properly deemed to be transporting his guest passengers at the moment. For all practical purposes, the transportation is in progress when, with the driver at the controls, the guest passenger is in the act of entering

or alighting from the vehicle. *Castle v. McKeown,* 327 Mich. 518, 42 N.W.2d 733 (1950); *Marsh v. Hogeboom,* 167 Kan. 349, 205 P.2d 1190 (1949).

But we need not examine such distinctions further for in the instant case decedent was not entering or leaving the car or in the process of doing either, nor was he performing any acts to further the vehicle's motion, nor was the driver in actual physical control of the automobile, and the parties had actually contemplated stopping and getting out of the car. Our present situation more closely parallels the facts in *Fone v. Elloian,* 297 Mass. 139, 7 N.E.2d 737 (1937), alluded to and distinguished in *Owens, supra.* In *Fone,* the parties had terminated the host-guest relationship in a contemplated halt to go swimming when the parked truck which had carried them to the pond slipped its brakes and ran into the guest. The statement in *Fone* that

> Their earlier common interest, the transportation of the plaintiff to the pond, had ceased. In the contemplation of the parties such a common interest would not again arise until, at some time which was not fixed, the homeward transportation of the plaintiff should be undertaken by the defendant.

seems quite appropriate to the present situation.

In the present case, we note three distinct circumstances, any one of which considered singly would probably not be controlling, but taken together point to a termination of the host-guest relationship before impact: (1) an appreciable halt in the vehicle's progress contemplated by both the driver and his passenger; (2) the removal of the passenger away from and clear of the vehicle after it had been parked; and (3) removal of the driver away from and clear of operational control of the automobile.

Directly in point is *Mastrocinque v. McCann,* 385 Pa. 33, 122 A.2d 55 (1956), where the driver stopped his car at night on the highway and he and the passenger alighted and walked to the rear to relieve themselves. The case, although reported with unusual brevity, holds that the host-guest relationship between driver and passenger ended when the passenger stepped out of the car and away from

the directions and control of the driver to be struck by an approaching car.

In *Harrison v. Gamatero*, 52 Cal. App. 2d 178, 125 P.2d 904 (1942), the driver had negligently double parked to allow her 7½-year-old guest passenger to leave the car and cross the street for the purpose of mailing a letter. On the child's return, she was struck by an oncoming car. The court, in upholding judgment against the driver, denied the host-guest relationship, saying:

> The injury to a guest for which he may not recover unless it has proximately resulted from the intoxication or wilful misconduct of his driver host with whom he has accepted a ride is one which occurs "during such ride." Certainly plaintiff was not riding in the automobile within the meaning of said section 403 [Cal. Vehicle Code] at the time of her injury.

*Shinofield v. Curtis*, 245 Iowa 1352, 66 N.W.2d 465, 50 A.L.R.2d 964 (1954), shows how closely yet how clearly the time sequence may affect the host-guest relationship. Defendant driver stopped his truck at a corner; his passenger stepped down and out; the truck started up, turned the corner, and ran over the guest, fatally injuring her. Although the Iowa host-guest statute used the word *riding* instead of *transported,* we think its statement quite pertinent:

> We are agreed the relation of guest and host between decedent and defendant ended before decedent was injured and section 321.494 [Iowa Codes, 1950, 1954] affords no defense. It is without dispute that defendant took decedent to her destination, she alighted safely from the truck, said "Goodnight" and closed the door of the truck. Defendant testifies he then "paused a moment, I suppose maybe a few seconds", and started up. By no stretch of imagination can it be said decedent was riding in the truck when she was injured.

For a similar holding that the host-guest relationship ends when the driver brings the guest to his home or destination and the guest has stepped away from the car, see *Stewart*

*v. McGarvey*, 348 Pa. 221, 34 A.2d 901 (1943); *Paul v. Floyd*, 337 S.W.2d 632 (Tex. Civ. App. 1960).

Also of interest is *Hunter v. Baldwin*, 268 Mich. 106, 255 N.W. 431 (1934), where the guest statute, in language almost identical with Washington's, reads ". . . that no person transported by the owner or operator . . . shall have a cause of action . . . unless such accident shall have been caused by the gross negligence . . . of the owner or operator . . . ." There, the defendant, a farmer, had driven his guest into town where both transacted business. As they started home, the car failed to start, and the driver, handing his guest the crank, asked him to crank the engine. In complying, the passenger received serious injuries as the car was in gear and rammed him against a building.

Ruling that interruption of the host-guest relationship extended to cranking the car for its return trip, the court said:

> While this is a case of first impression, we are constrained to hold that when plaintiff left the car upon arrival at the village of Kingston and remained away from it for a period of two or three hours, he ceased to be a guest passenger and that while in the act of cranking the car at the request of the operator of the car he had not resumed the position of that of a guest passenger.

In the instant case, the transportation had ceased before impact. During a halt in the journey contemplated by both driver and passengers, the driver stood outside of, away from, and had no physical control over the automobile, nor was he then physically positioned to govern its movement. The passengers had removed themselves from and stood away from the vehicle after the car had stopped. Sufficient time had elapsed and adequate physical separation had occurred between the departure of driver and guests from the vehicle after the halt and before impact, to interrupt the host-guest relationship. Thus, at the time of impact, the driver's duty to the decedent could not be said to depend upon the host-guest relationship, but instead

came within the rule of ordinary care and prudence under the circumstances.

An assignment of error directed to the court's instruction on damages is, we think, covered by our analysis of the subject in *Skeels v. Davidson,* 18 Wn.2d 358, 139 P.2d 301, 149 A.L.R. 225 (1943).

The judgment is, therefore, affirmed.

ALL CONCUR.